Donna Silver, Esq., State Bar No. 90395
Dennis M. Elber, Esq., State Bar No. 70746
STOLPMAN, KRISSMAN, ELBER & SILVER LLP
111 West Ocean Boulevard, Suite #1900, Long Beach, CA 90802
Phone: 562/435-8300; Fax: 562/435-8304
E-Mail: dsilver@skeslaw.com; elber@skeslaw.com;  jk@skeslaw.com

John N. Tedford, IV, Esq., State Bar No. 205537
Richard K. Diamond, Esq., State Bar No. 070634
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067-4402
Phone: 310/277-0077; Fax:  310/277-5735; E-Mail: jtedford@dgdk.com;
Rdiamond@dgdk.com

Attorneys for Claimant, Art Pack, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>GEORGES MARCIANO, *et al.,*<br><br>        Debtors.<br>_____<br>Art Pack, Inc.<br><br>  Contested Matter Claimant and<br>  Movant,<br><br>      v.<br><br>DAVID GOTTLIEB, solely in his<br>capacity as Chapter 11 Trustee for<br>the Estate of Georges Marciano,<br><br>  Contested Matter Objector and<br>  Respondent.<br>_____ | Case No.: 2:15-cv-00444-CJC<br>Hon. Cormac J. Carney<br><br>**REPLY TO OPPOSITION TO MOTION TO WITHDRAW BANKRUPTCY REFERENCE; MEMORANDUM OF POINTS AND AUTHORTIES**<br><br><br><br>**Date:  February 23, 2015**<br>**Time:  1:30 p.m.**<br>**Location: USDC, Courtroom 9B** |

**TO THE ABOVE-ENTITLED COURT AND TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

COMES NOW Movant ART PACK, INC. and submits the following Reply to Opposition to Withdraw Bankruptcy Reference.

This Reply is based upon the attached Memorandum of Points and Authorities, the Requests for Judicial Notice; and Declaration of Dennis M. Elber (1) in Reply to Respondent's Evidentiary Objections; and (2) in Support of Reply to Respondent's

Opposition to Motion to Withdraw Bankruptcy Reference, and Exhibits thereto, filed concurrently herewith, and upon the Court's file in this matter.

DATED: February 9, 2015          Respectfully Submitted,

STOLPMAN, KRISSMAN, ELBER
& SILVER LLP

By:     s/ Dennis M. Elber
DONNA SILVER
DENNIS M. ELBER
Attorneys for Claimant, Art Pack
E-Mail: elber@skeslaw.com /
dsilver@skeslaw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

MEMORANDUM OF POINTS AND AUTHORITIES

I.      REPLY OVERVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      This is a Non-Core Personal Injury Claim. . . . . . . . . . . . . . . . 1

        B.      Non-Core Claims Require District Court Adjudication. . . . . . . . 1

        C.      Under Well Established Law, A Corporation Is Treated As A
                Person With The Right To Sue For Malicious Prosecution. . . . . . 1

        D.      There Is No Consent To Final Adjudication In The
                Bankruptcy Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        E.      The Law Does Not Require That This Court Have Findings
                to Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        F.      There Is Ample Evidence That Supports The Forthwith Withdrawal
                Of The Reference of this Claim to the Bankruptcy Court. . . . . . . . 2

        G.      Further Delay In Having This Court Review The ART PACK,
                INC. Claim Will Not Accomplish Anything Beneficial To The
                Claim Or The Administration Of Justice. . . . . . . . . . . . . . . . . . 3

        H.      There Is No Realistic Potential For Settlement Of The Bankruptcy
                Proceedings Because The Objectors Refuse To Apply
                California Law To The Proffered Facts. . . . . . . . . . . . . . . . . . . 3

        I.      The Bankruptcy Judge Has Not Demonstrated Any Willingness To
                Issue Findings In The Foreseeable Future. . . . . . . . . . . . . . . . . 3

II.     MARCIANO'S DESPICABLE USE OF CALIFORNIA STATE COURT TO
        MALICIOUSLY PROSECUTE ART PACK RESULTED IN A PERSONAL
        INJURY TO ART PACK, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    IT WOULD BE UNCONSTITUTIONAL TO DEPRIVE THE LEGAL
        "PERSON" ART PACK, INC. OF ADJUDICATION BY AN ARTICLE
        III JUDGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.     ART PACK, INC. HAS NOT WAIVED ITS RIGHT TO ADJUDICATION
        BY AN ARTICLE III JUDGE. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.      THE OPPOSITION UNDERSCORES THE NEED FOR AN ARTICLE
        III JUDGE FAMILIAR WITH TORT LAW. . . . . . . . . . . . . . . . . . . 16

VI.     IT IS THE OBJECTORS FUNDAMENTAL REFUSAL TO
        ACKNOWLEDGE CALIFORNIA LAW THAT PRECLUDES ANY
        REASONABLE POSSIBILITY OF SETTLEMENT. . . . . . . . . . . . . . 17

///

1

**Page**

2    **VII.   CONCLUSION.**........................................... 23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **<u>TABLE OF AUTHORITIES</u>**

2

**<u>Cases</u>**                                                           **<u>Page(s)</u>**

3

*Adelson v. Smith (In re Smith)*
    389 B.R. 902 (Bankr.D.Nev. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

4

*Anthony v. Baker (In re Baker)*
    86 B.R. 234 (D.Colo.1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5

*Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*
    815 F.2d 165 (1st Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6

7

*Baumgart v. Fairchild Aircraft Corp.*
    981 F.2d 824 (5th Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7,8

8

*Boeken v. Philip Morris Incorporated*
    127 Cal.App.4th 1640 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

9

10

*Burwell v. Hobby Lobby Stores, Inc.* (2014)
    —— U.S. —— [134 S.Ct. 2751]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10

11

*Citi–Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.*
    114 Cal.App.4th 906 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9

12

13

*Coverstone v. Davies*
    38 Ca1.2d 315 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

14

*Executive Benefits Insurance Agency v. Arkinson (In re Bellingham)*
    702 F.3d 553 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10,11,13,14

15

16

*First Nat'l Bank of Boston v. Bellotti*
    435 U.S. 765 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17

*Frazin v. Haynes & Boone, LLP (In re Frazin)*
    732 F.3d 313 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,11

18

19

*Granfinanciera v. Nordberg (In re Chase and Sanborn Corp.)*
    492 U.S. 33 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,11

20

*Great Lakes Reinsurance (UK) PLC v. Sea Cat I, LLC*
    653 F.Supp.2d 1193 (W.D. Okl. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21

22

*Haaland v. Corporate Managment, Inc.*
    172 B.R. 74 (S.D. Cal. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23

*Hasse v. Rainsdon (In re Pringle)*
    495 B.R. 447 (B.A.P. 9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

24

25

*Hansen v. The Borough of Seaside Park (In re Hansen)*
    164 B.R. 482 (D.N.J.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26

*In Re Cohen*
    522 B.R. 232 (C.D. Cal 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,13,14

27

28

**Cases**                                                                                      **Page(s)**

*In re Gary Brew Enterprises Ltd.*
    198 B.R. 616 (Bankr.S.D.Cal. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*In re Marshall*
    600 F.3d 1037 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*In re Nifong*
    2008 WL 2203149 (Bankr.M.D.N.C., May 27, 2008). . . . . . . . . . . . . . . . . .  5,7

*In re Marciano*
    446 B.R. 407 (Bankr.C.D.Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*In re Mesala Silva*
    2009 WL 6699687 (Bankr.S.D.Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . .  5,6

*In re Schepps Food Stores, Inc.*
    169 B.R. 374 (Bankr.S.D.Tex. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*In re UAL Corp.*
    310 B.R. 373 (Bankr.N.D.Ill. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*In re United States Fin'l. Sec. Litigation*
    609 F.2d 411 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Marciano v. Fahs (In re Marciano)*
    459 B.R. 27 (9th Cir. BAP 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*
    458 U.S. 50 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

*Northern Pac. R. Co. v. Whalen*
    149 U.S. 157 (1893). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Oti Kaga, Inc. v. S.D. Housing Dev. Auth.*
    188 F.Supp.2d 1148 (D.S.D. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Palazzola v. City of Toledo (In re Palazzola)*
    2011 WL 3667624 (Bankr.N.D.Ohio Aug. 22, 2011). . . . . . . . . . . . . . . . . .  5

*Pony v. County of Los Angeles*
    433 F.3d 1138(9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*
    450 F.3d 1295 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Ross v. Bernhard*
    396 U.S. 531 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2,11

*Roemer v. Commissioner*
    716 F.2d 693 (9th Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Sheldon Appel Co. v. Albert & Oliker*
    47 Cal. 3d 863 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1,4

**Cases**                                                                                                    **Page(s)**

*Smoot v. Fox*
    353 F.2d 830 (6th Cir.1965), cert. denied, 384 U.S. 909 (1966). . . . . . . . . . . 11

*Stern v. Marshall*
    —— U.S. ——, 131  S.Ct. 2594, 180 L.Ed.2d 475 (2011). . . . . . . . . . . . 1,7,12

*Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*
    281 B.R. 154 (Bankr.D.Conn. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*S.V. v. Kratz*
    No. 12-705, 2012 WL 3070979 (E.D. Wis. July 26, 2012). . . . . . . . . . . . . . . 4

*Waldman v. Stone*
    698 F.3d 910 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,11

*Wellness Int'l Network, Ltd. v. Sharif*
    727 F.3d 751 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,11,12

*Wikstrom v. Yolo Fliers Club*
    206 Cal. 461 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**United States Constitution (Amended)**

Article III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**United States Statutes and Codes**

28 U.S. Code
    Section 157. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,8,9
    Section 157(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,15

42 U.S.Code
    Section1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Bankruptcy Code
    Section 522(d)(11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Internal Revenue Code
    Section 104(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**California Statutes and Codes**

Cal. Corporations Code
    Section 207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Other Authority**

Judicial Council of California, Civil Jury Instructions
    CACI 356. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    CACI 3501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    CACI 3513. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    CACI 3903N. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## REPLY OVERVIEW.

In this Reply, Art Pack examines the following points which establish that this Court should withdraw this bankruptcy court reference forthwith.

### A.    This is a Non-Core Personal Injury Claim.

ART PACK, INC.'s state common law claim of malicious prosecution is a personal injury claim which requires final adjudication by an Article III court. (See *Stern v. Marshall*, ––– U.S. ––––, 131 S.Ct. 2594, 2611 (2011) [bankruptcy court lacked constitutional authority to "resolve and enter final judgment on a state common law claim"]; *Granfinanciera v. Nordberg (In re Chase and Sanborn Corp.*),492 U.S. 33, 55-56 (1989)[bankruptcy court lacked jurisdiction to adjudicate a fraudulent conveyance claim because they "are quintessentially suits at common law that more nearly resemble state-law contract claims" ]; *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982)[(Rehnquist, J., concurring) [claim requires Article III judge when it is for "breach of contract, misrepresentation, and other counts which are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789"].)

### B.    Non-Core Claims Require District Court Adjudication.

"'Personal injury' was designated by Congress in the narrow class of non-core cases to comply with the structural requirement of the Constitution that such common law torts be finally adjudicated by an Article III judge." (*Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 830, 831 (5th Cir.1993).)

### C.    Under Well Established Law, A Corporation Is Treated As A Person With The Right To Sue For Malicious Prosecution.

California law recognizes a corporation's right to recover damages when it is maliciously prosecuted.  (*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863,871 (1989); *Citi–Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.*, 114 Cal.App.4th 906, 914 (2003).)  Because malicious prosecution was a common law claim existing

1 | before 1789, the 7th Amendment guarantees a jury trial to any person, which is defined
2 | to include a corporation.  (*Ross v. Bernhard*, 396 U.S. 531, 533 (1970).)

3 |     If a person has right to a 7th Amendment jury trial, that person also has a right to
4 | final adjudication by an Article III court.  (*Executive Benefits Insurance Agency v.*
5 | *Arkinson (In re Bellingham)* 702 F.3d 553, 563 (9th Cir. 2012); *Burwell v. Hobby Lobby*
6 | *Stores, Inc*. (2014) —— U.S. —— [134 S.Ct. 2751, 2768].)

7 | **D.**    **There Is No Consent To Final Adjudication In The Bankruptcy Court.**

8 |     ART PACK, INC.  has not waived its Constitutional right to final adjudication by
9 | an Article III judge because, even if a litigant can consent to waiving a structural
10 | imperative of the Constitution, ART PACK, INC. has repeatedly and expressly objected
11 | to the Bankruptcy Court's authority. (*In re Bellingham*;  *Wellness Int'l Network, Ltd. v.*
12 | *Sharif*, 727 F.3d 751, 768–70 (7th Cir. 2013);  *Frazin v. Haynes & Boone, LLP (In re*
13 | *Frazin)*; 732 F.3d 313, 319–20 (5th Cir. 2013); and *Waldman v. Stone,* 698 F.3d 910,
14 | 917–18 (6th Cir. 2012).)

15 | **E.**    **The Law Does Not Require That This Court Have Findings to Review.**

16 |     The Plan Administrator states that even if this Court must finally adjudicate ART
17 | PACK, INC. claim, the Court should continue to wait upon the Bankruptcy Court
18 | because "de novo" review requires Bankruptcy Court findings, but cites no authority for
19 | that proposition.

20 | **F.**    **There Is Ample Evidence That Supports The Forthwith Withdrawal Of**
21 | **The Reference of this Claim to the Bankruptcy Court.**

22 |     The Plan Administrator completely fails to address what ART PACK, INC. sees
23 | as the fundamental impetus to this Motion, that ART PACK, INC. was forced into the
24 | uncomfortable position of asking this Court to withdraw the claim from Judge Kaufman
25 | because of her apparent bias and a demonstrated unwillingness to issue findings of fact.
26 | The repeated actions and comments of  Judge Kaufman forced ART PACK, INC. into
27 | the difficult  position of addressing the appearance of bias directly in ART PACK,
28 | INC.'s Final Argument. Since then, Judge Kaufman's increasingly injudicious comments

1  and inability to render a decision within the very schedule that she imposed, so as to

2  preclude ART PACK, INC. from a state court jury trial, have compelled ART PACK,

3  INC. to directly confront the issue through this Motion.

**G.  Further Delay In Having This Court Review The ART PACK, INC. Claim Will Not Accomplish Anything Beneficial To The Claim Or The Administration Of Justice.**

6  If, as scheduled, [Proposed] Findings had been issued by June 1, 2014, ART

7  PACK, INC. would have gladly embraced the cover of incorporating Judge Kaufman's

8  litigation commentary into its request for review of those findings. However, enough is

9  enough, and there is no reason in judicial administration, let alone the appearance of

10  justice, for all the parties to wait for Judge Kaufman to tee-it-up so that ART PACK,

11  INC. can tee-off.

**H.  There Is No Realistic Potential For Settlement Of The Bankruptcy Proceedings Because The Objectors Refuse To Apply California Law To The Proffered Facts.**

14  Ultimately, this Court will be looking at this case "from the beginning;" "anew;"

15  "with a fresh pair of eyes." Why wait?  The Plan Administrator wants further delay

16  because there is a scheduled Mediation for  March 4, 2015. ART PACK, INC. will

17  participate fully as ordered, but it would be disingenuous to pretend that there can be a

18  settlement in this case.  It is not just how polarized the parties are in their respective

19  positions, it is how they arrived there. The Judgment Creditors had an unbridled run to

20  their damages, unencumbered by any trial level analysis because of the default

21  proceedings. The trial courts did not have the advantage of adversarial proceedings,

22  which would not only have informed the trial courts' judgment, but compelled

23  understanding by the Judgment Creditors themselves.  They certainly understand the

24  horror of being unjustly accused and legally terrorized, but they have no conception of

25  the actual litigation gauntlet that plaintiffs ordinarily have to confront, wherein in each

26  assertion is vigorously challenged.

**I.  The Bankruptcy Judge Has Not Demonstrated Any Willingness To Issue Findings In The Foreseeable Future.**

1    Finally, the Plan Administrator asserts that if the case does not settle at the March

2    4th Mediation, Judge Kaufman will decide shortly thereafter. However, there is no

3    evidence to support that conclusion, and much history to oppose it.

**II.**

4

**MARCIANO'S DESPICABLE USE OF CALIFORNIA STATE COURT TO**
**MALICIOUSLY PROSECUTE ART PACK RESULTED IN A PERSONAL**
**INJURY TO ART PACK, INC**.

5

6

7    The Plan Administrator incorrectly asserts that ART PACK, INC.'s claim is only

8    viable under the broadest possible interpretation of "personal injury." Incorrect, because,

9    of the three approaches, the only one that arguably could not include ART PACK, INC.'s

10   malicious prosecution claim is a physical injury requirement.

11   Most courts find that "[t]he term 'personal injury torts' embraces a broad category

12   of private or civil wrongs for which a court provides a remedy in the form of an action

13   for  damages, and includes damage to an individual's person and any invasion of

14   personal rights, ..." (*Hansen v. The Borough of Seaside Park (In re Hansen)*, 164 B.R.

15   482, 486 (D.N.J.1994).)  "The term personal injury encompasses more than just physical

16   injuries. It means injury to the person of another." (*S.V. v. Kratz*, No. 12-705, 2012 WL

17   3070979, at *2 (E.D. Wis. July 26, 2012).)

18   Malicious prosecution is a common law tort in California that provides for money

19   damages. (*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863,871 (1989).) As such,

20   ART PACK, INC.'s claim fits  comfortably within the analysis of *Stranz v. Ice Cream*

21   *Liquidation, Inc. (In re Ice Cream Liquidation, Inc*.), 281 B.R. 154 (Bankr.D.Conn.

22   2002), and *Adelson v. Smith (In re Smith)*, 389 B.R. 902 (Bankr.D.Nev. 2008).  In the

23   former,  the Court's ultimate conclusion was that the claim for work place sexual

24   harassment under New York law was a "personal injury" one because it was similar to

25   a Title VII personal injury claim for damages, not just equitable relief. This was true

26   even though the "employment relationship is a contractual (and, hence, economic) one."

27   The court pointed out that if a statute, for example, provided nothing more than back pay

28   and any employee benefits for up to sixty days, it would not be a personal injury because

4

1  then it would "deemed to be more like a contract claim." (*In Re Ice Cream Liquidation,*
2  *Inc.*, 281 B.R. at 161,162; see also *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 908
3  (Bankr.D.Nev.2008) ["This middle ground is the most appealing because it is closely
4  aligned with what are traditionally thought of as the 'common law torts'"].)

5         Although ART PACK, INC. does not need anything more than the middle ground
6  to secure its right to an Article III judge, the cases categorizing "personal injury" more
7  broadly are important, because their statutory interpretation is guided by Section 1983
8  Supreme Court decisions. (See *Palazzola v. City of Toledo (In re Palazzola)*, 2011 WL
9  3667624 at *5 (Bankr.N.D.Ohio Aug. 22, 2011) [Plaintiffs' § 1983 claim "is the subject
10  of a suit at the common law" such that Article III assigns responsibility for deciding that
11  claim to Article III judges) (citing Marshall, 131 S.Ct. at 2609]; see also *In re Nifong*,
12  2008 WL 2203149 at *3 (Bankr.M.D.N.C., May 27, 2008) for a thorough discussion of
13  the cases and concepts informing the broadest possible interpretation.)

14         In the 9th Circuit, no court has adopted the physical injury requirement. *Anthony*
15  *v. Baker (In re Baker)*, 86 B.R. 234, 236 (D.Colo.1988), found malicious prosecution
16  to be a personal injury; *In re Smith*, 389 B.R. 902, at 908, defamation. The only other
17  two courts in the 9th circuit to actually consider the issue have adopted the broadest
18  possible interpretation, inclusive of section 1983. (See *In re Gary Brew Enterprises Ltd.*,
19  198 B.R. 616, 620 (Bankr.S.D.Cal. 1996) ["The use of the term 'personal injury tort'
20  action in § 157(b)(2)(B) is the same personal injury tort involved in civil rights actions.
21  This Court, to be consistent with Wilson and Goodman, concludes that the use of the
22  term 'personal injury tort' in § 157 is the same as applied in civil rights litigation on the
23  use of the appropriate state statute of limitations. It simply defies common sense to hold
24  otherwise. It would be a strange anomaly to adopt the personal injury tort statute of
25  limitations for civil rights actions and then hold such term under § 157(b)(2)(B) means
26  something altogether different when non-core jurisdiction is at issue. I therefore reject
27  the rationale of Atron and hold the gravamen of the Plaintiff's Second Amended
28  Complaint sounds in tort under 28 U.S.C. § 1981"]; see also, *In re Mesala Silva*, 2009

1  WL 6699687, at*3.)

2      The only appellate comment is Judge Kleinfeld's concurrence in *In re Marshall*,
3  600 F.3d 1037,1065, (9th Cir. 2010),   which clearly rejects the physical injury
4  requirement:  "Bankruptcy court is the wrong place to litigate a common law claim for
5  personal injury to final judgment." (*Id*., at 1066.)  "Article III precludes bankruptcy
6  courts from entering  final judgments on tort claims founded on state law." (*Id.,* at 1068,
7  1069.)

8      Ignoring all of this, The Plan Administrator  relies on *In Re Cohen*, which limited
9  Section 157 to physical injuries based on a  summary conclusion, bereft of analysis.
10 However, when further studied, it becomes clear that the "narrow range of claims" Rep.
11 Kastenmeier was discussing involved non-core cases as opposed to core  cases, not the
12 type of personal injury. (See  *In re UAL Corp*., 310 B.R. 373, 379–83, fn.9
13 (Bankr.N.D.Ill. 2004). [The conference report ... states that a narrow category of cases
14 are not to be construed as core proceedings. Thus, personal injury cases and wrongful
15 death cases may not be heard to final judgment by a bankruptcy judge.... Finally, the
16 conference report states that in this narrow range of cases the parties do not lose any
17 right to a jury trial that they may have had if the claim had been cognizable outside the
18 bankruptcy context."]; *In re Schepps Food Stores, Inc*., 169 B.R. 374 (Bankr.S.D.Tex.
19 1994) ["Apparently, early versions of the Bankruptcy Amendments exempted all
20 unliquidated and contingent claims from the core jurisdiction of the bankruptcy courts
21 in an effort to comply with Marathon. Realizing that this might unduly impede timely
22 administration  of bankruptcy cases, Congress  limited  the  exclusion  in section
23 157(b)(2)(B) to personal injury and wrongful death claims"]; *Arnold Print Works, Inc.
24 v. Apkin (In re Arnold Print Works, Inc.*), 815 F.2d 165, 168 (1st Cir. 1987) ["Congress
25 intended that 'core proceedings' would be interpreted broadly, close to or congruent with
26 constitutional limits. The sponsors repeatedly said that 95% of the proceedings brought
27 before  bankruptcy  judges  would  be  core  proceedings,'  citing, Statement of Rep.
28 Kastenmeier, 130 Cong. Rec. E1108-E1110 (daily ed. March 20, 1984); Statement of

Rep. Kindness, Id., at H1848, H1850"].)

The bankruptcy courts that have read a physical injury requirement into Section 157 completely ignore, as does the Plan Administrator, that in section 522(d)(11) of the Bankruptcy Code, Congress specifically uses the term "personal bodily injury" and "presumably would have used the same language in section 157(b)(5) had it intended to limit that section to torts involving bodily injury." (*In re Nifong*, 2008 WL 2203149, at *3.)

However, regardless of statutory analysis,  it is the structural,  constitutional dimension that the Plan Administrator refuses to acknowledge.  In *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) the Supreme Court held that a common law counterclaim was beyond the reach of final adjudication by a bankruptcy judge because:  "What is plain here is that this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment by a court with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." (*Id*. at  2615.)

Previously, the 5th Circuit explained:

"Congress enacted § 157(b)(5) 'to conform the bankruptcy statute to the dictates of Marathon' by excluding from bankruptcy court jurisdiction subject matter that is not specifically derived from the bankruptcy laws. Matter of Wood, 825 F.2d 90, 95 (5th Cir.1987). This intent is manifested throughout the statute's legislative history. See 130 Cong.Rec. S 8891 (June 29, 1984) (remarks of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. at 590 ('Title I [which includes § 157(b)(5) ] corrects the constitutional flaw discerned by the Supreme Court in the Marathon case which prohibited bankruptcy judges, who lack life tenure, from deciding certain bankruptcy cases grounded in State law.'); 130 Cong.Rec. H 7489 (June 29, 1984) (remarks of Cong. Rodino), reprinted in 1984 U.S.C.C.A.N. at 576 ('Title I creates a new bankruptcy court arrangement to replace the provisions enacted in the Bankruptcy Reform Act of 1978—Public Law 95–598—which

were found unconstitutional by the U.S. Supreme Court in [*Marathon* ].') By placing in the district courts jurisdiction over certain types of cases, specifically personal injury and wrongful death actions, Congress responded directly to the constitutional infirmities identified by the Court in Marathon while preserving the Article I administrative court system that it had created to deal with bankruptcy-related matters." (*Baumgart v.Fairchild Aircraft Corp*, 981 F.2d 824, at 830, 831.)

Instead of acknowledging and analyzing Section 157 in light of that constitutional mandate, The Plan Administrator resorts to a tax case, *Haaland v. Corporate Managment, Inc*., 172 B.R. 74,77 (S.D. Cal. 1989), wherein the court found a statute required a physical injury component for income tax exemptions because of a clear legislative history and the particular language of the statute. The Plan Administrator also invokes another tax case, *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir.1983) to deny ART PACK, INC. its constitutional right to an Article III judge because of its corporate status. However, *Roemer* was interpreting I.R.C. § 104(a)(2) to determine whether "a defamation of an individual constitutes a personal injury for purposes of I.R.C. § 104(a)(2)." (*Id*. at 694.) The "personal injury," "corporation" reference is in the context of *Roemer's* specific statutory analysis. (*Id*. at 699, fn.4.)

In the same vein, the Plan Administrator invokes *Northern Pac. R. Co. v. Whalen*, 149 U.S. 157 (1893), where an injunction was requested pursuant to a statute conferring standing to "any person whose property is injuriously affected, or whose personal enjoyment is lessened, by the nuisance." (*Id*. at 163.) In that specific context, a "corporation cannot be said to have life or health or senses and that the only ground on which it could obtain either damages or an injunction was injury to its property." (*Id*. at 163; *Great Lakes Reinsurance (UK) PLC v. Sea Cat I, LLC*, 653 F.Supp.2d 1193, 1199 (W.D. Okl. 2009).) *Oti Kaga, Inc. v. S.D. Housing Dev. Auth*., 188 F.Supp.2d 1148 (D.S.D. 2002) involved a corporation specifically seeking compensation for emotional distress damages.

These cases neither address nor illuminate the constitutional foundation informing and controlling any statutory interpretation of Section 157.  However, before discussing that fundamental issue, ART PACK, INC. addresses the Plan Administrator's contention that ART PACK, INC. took a previously contrary position in a state court filing.  Exhibit 38 to the Declaration of Dennis M. Elber filed concurrently herewith,  is a filing document that requires a case type box to be checked.  There are 41 boxes in Item 1, grouped under 12 different areas. The first group was auto tort, the next group was "Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) and included four different boxes: Asbestos; Product liability; Medical malpractice; and Other PI/PD/WD. The following group is "Non-PI/PD/WD (Other) Tort" and includes: Business tort/unfair business practice; civil rights; Defamation; Fraud; Intellectual property; Professional negligence; Other non-PI/PD/WD. Given the instructions, the groupings, and the boxes it seemed then, and it still seems today, that the one to check was "Other non-PI/PD/WD."  The Plan Administrator never explains how this informs the statutory and constitutional issues involved herein.

## III.

### IT WOULD BE UNCONSTITUTIONAL TO DEPRIVE THE LEGAL "PERSON" ART PACK, INC. OF ADJUDICATION BY AN ARTICLE III JUDGE.

The Plan Administrator and Judge Kaufman believe that a corporation can not suffer personal injury. This, of course, ignores California law cited in the Motion, especially *Citi-Wide,* which specifically provides that a corporation has a cause of action for money damages when unjustifiable litigation is used as an instrument  "with which to maliciously injure a small business and its owner." (*Citi–Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp*., 114 Cal.App.4th 906, 914 (2003).)

A corporation is a "person" under California law, that has capacity to sue or defend. (See Cal. Corp.Code §207.) In *Coverstone v. Davies* (1952) 38 Cal.2d 315, 324, the California Supreme Court recognized the established rule that actions for malicious prosecution "are personal actions which do not give rise to a cause of action in anyone

9

1    other than the person directly aggrieved." The "person" "directly aggrieved" was ART
2    PACK, INC., under the ownership and control of Ali Mohajeri. (See also, *Wikstrom v.*
3    *Yolo Fliers Club* (1929) 206 Cal. 461, 463 ["it is pretty generally held in America that
4    the only causes or rights of action which are not transferable or assignable in any sense
5    are those which are founded upon wrongs of a purely personal nature, such as ....
6    malicious prosecution..."]; *Pony v. County of Los Angeles* (9th Cir. 2006) 433 F.3d 1138,
7    1143,1144 [Because "[t]he Supreme Court has construed claims brought under Section
8    1983 as tort claims for personal injury under California law", and "[t]he right to sue in
9    tort for personal injury is non-assignable under California law,""[a]ccordingly, plaintiff's
10   right to seek statutory attorney's fees is not transferrable in California"].)

11        "We have clearly and repeatedly held that corporations are 'persons' within the
12   meaning of section 1983." (*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v.*
13   *Broward County*, 450 F.3d 1295, 1305 (11th Cir.2006); see also, *First Nat'l Bank of*
14   *Boston v. Bellotti*, 435 U.S. 765, 780 n. 15 (1978)["It has been settled for almost a
15   century that corporations are persons within the meaning of the Fourteenth
16   Amendment"].)

17        "Congress provided protection for people like the [plaintiffs ] by employing a
18        familiar legal fiction: It included corporations within [the] definition of 'persons.'
19        But it is important to keep in mind that the purpose of this fiction is to provide
20        protection for human beings. A corporation is simply a form of organization used
21        by human beings to achieve desired ends. An established body of law specifies the
22        rights and obligations of the people (including shareholders, officers, and
23        employees) who are associated with a corporation in one way or another. When
24        rights, whether constitutional or statutory, are extended to corporations, the
25        purpose is to protect the rights of these people." (*Burwell v. Hobby Lobby Stores,*
26        *Inc.* (2014) —— U.S. —— [134 S.Ct. 2751, 2768.)

27        "Stern fully equated bankruptcy litigants' Seventh Amendment right to a jury trial
28   in federal bankruptcy proceedings with their right to proceed before an Article III judge."

1  (*Executive Benefits Insurance Agency v. Arkinson (In re Bellingham)* 702 F.3d 553, at

2  563.)  In order for a party to have the right to a jury trial for a particular dispute, that

3  right must be accorded either by statute or the Seventh Amendment of the Constitution.

4  (See *Granfinanciera*, 109 S.Ct. 2782, 2789, n. 3.) The Seventh Amendment to the

5  Constitution guarantees the right to jury trial only in "Suits at common law."  (U.S.

6  Const. Amend. VII; see *Ross v. Bernhard*, 396 U.S. 531, 533 (1970).) "[A] corporation's

7  suit to enforce a legal right was an action at common law carrying the right to jury trial

8  at the time the Seventh Amendment was adopted." (*Id.* at 533-534.) "The Seventh

9  Amendment to the United States Constitution preserves the right to a jury trial in all suits

10  at common law where the value in controversy exceeds twenty dollars.... An action for

11  malicious prosecution falls well within the recognized forms of action at common law."

12  (*Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir.1965), cert. denied, 384 U.S. 909 (1966).)

13  Generally, where a Plaintiff seeks money damages, there is a right to a jury trial as

14  damages are a well recognized form of relief at common law.  (*In re United States Fin'l.*

15  *Sec. Litigation*, 609 F.2d 411, 423 (9th Cir. 1979).)

16  **IV.**

17  **ART PACK, INC. HAS NOT WAIVED ITS RIGHT TO**
   **ADJUDICATION BY AN ARTICLE III JUDGE.**

18

19  *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 768–70 (7th Cir.2013);

20  *Frazin v. Haynes & Boone, LLP (In re Frazin)*; 732 F.3d 313, 319–20 (5th Cir.2013);

21  and *Waldman v. Stone*, 698 F.3d 910, 917–18 (6th Cir.2012) held that a party could not

22  consent to a bankruptcy court fully adjudicating claims where it otherwise lacks the

23  constitutional authority to do so.  "We discern nothing in Stern that supports the

24  proposition that a party may waive an Article III objection to a bankruptcy judge's entry

25  of final judgment. In point of fact, a different portion of the Stern opinion casts serious

26  doubt on whether notions of waiver and consent have any role in bankruptcy, given that

27  creditors must go to the  bankruptcy court to pursue their claims. See 131 S.Ct. at

28  2614–15 & n. 8; see also Granfinanciera, 492 U.S. at 59 n. 14, 109 S.Ct. 2782."

(*Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d at 767-768.)

*Stern* recognized that the particular circumstances of bankruptcy can force a party into bankruptcy court because there is no viable alternative: "[I]n contrast to the objecting party in Schor, id., at 855–856, 106 S.Ct. 3245, 92 L.Ed.2d 675, Pierce did not truly consent to resolution of Vickie's claim in the bankruptcy court proceedings. He had nowhere else to go if he wished to recover from Vickie's estate. See Granfinanciera, supra, at 59, n. 14, 109 S.Ct. 2782, 106 L.Ed.2d 26 (noting that '[p]arallel reasoning [to Schor ] is unavailable in the context of bankruptcy proceedings, because creditors lack an alternative forum to the bankruptcy court in which to pursue their claims')." (*Stern v. Marshall,* 131 S.Ct. 2594, at 2614.)

The Judgment Creditors invoked the "central policy behind involuntary petitions [which] is to protect the threatened depletion of assets or to prevent the unequal treatment of similarly situated creditors." (*In re Marciano*, 446 B.R. 407, 419 (Bankr.C.D.Cal. 2010).) " Marciano does not dispute that he is not paying the eight judgment creditors. Marciano SUF ¶ 3. The total amount of the judgments is approximately $260 million. Marciano admits that he does not have $260 million in cash or cash equivalents to pay the judgments. Id. at ¶ 22. In the state court action, Marciano filed a declaration from his certified public accountant estimating his net worth at $175 million. Id." (*In re Marciano*, 446 B.R. at 422.) "Where, as here, the bankruptcy court expressed a primary concern that the issue of equality of distribution would not effectively be dealt with in any other forum, we conclude that the bankruptcy court did not abuse its discretion in denying the Second Dismissal Motion." (*Marciano v. Fahs (In re Marciano*), 459 B.R. 27,50 (9th Cir. BAP 2011).)

In choosing the involuntary bankruptcy route in a United States bankruptcy court, the judgment creditors effectively foreclosed any alternative forum to ART PACK, INC. because anything left over after the Judgment Creditors got done with Marciano would make any separate action by ART PACK, INC. financially unfeasible.

The Supreme Court heard arguments in *Sharif* in January. The transcript of the

1  oral argument is attached as Exhibit 39 to the Declaration of Dennis M. Elber filed
2  concurrently herewith.

3      The Ninth Circuit reached the opposite conclusion from the 5th, 6th, and 7th Circuits
4  in *In re Bellingham Insurance Agency*, Inc., 702 F.3d. 553, holding that implied consent
5  was sufficient.  *In re Cohen*  522 B.R.  232, 239 (C.D. Cal 2014), cited by the Plan
6  Administrator, states in this regard:

7      "At least under current Ninth Circuit authority, parties can consent to final
8      adjudication of claims that are constitutionally non-core, and such consent may be
9      implied. See Bellingham, 702 F.3d 553 (litigant consented to adjudication by
10     bankruptcy judge by failing timely to object), aff'd on other grounds, Arkison, ——
11     U.S. ——, 134 S.Ct. 2165, 189 L.Ed.2d 83; Pringle, 495 B.R. 447 (rebuttable
12     presumption that failure to challenge authority to issue final order is intentional
13     and indicates consent). See also Stern, —— U.S. ——, 131 S.Ct. 2594, 2608, 180
14     L.Ed.2d 475 (if litigant "believed that the Bankruptcy Court lacked the authority
15     to decide his claim ... then he should have said so—and said so promptly.").
16     Debtor and the Committee have expressly consented to this court's entry of final
17     orders or judgments (see dkt. 394 at 25–27), but both the IRS and Ms. Cohen have
18     expressly declined to provide such consent (dkt. 387, 419). Accordingly, this
19     alternative ground for this court's authority to enter final orders or judgments is
20     not available."

21     The Plan Administrator acknowledges that ART PACK, INC. has specifically and
22  repeatedly objected. There is no express consent. (See Joint Pre-Trial Order, Exhibit 5,
23  and ART PACK, INC.'s [Proposed] Conclusions of Law, Exhibit 11.) ART PACK,
24  INC.'s  initial filing, requesting that the Trustee's claim Objection be overruled as a
25  matter of law, can not constitute the type of implied consent required by *Bellingham*.
26  Judge Kaufman:  "[ART PACK, INC.] asked the Court to affirm an amount of claim
27  based on their response to the objection of claim of over $80,000,000. To summarily
28  determine the amount of the claim."  (10-30-13 RT: 6:18-7:5.)

As further stated in *In re Cohen,* 522 B.R. at 239:

"Even in a constitutionally non-core proceeding under Stern, the bankruptcy court can resolve pretrial matters, including case-dispositive motions that do not require factual findings. See In re Professional Satellite and Communication, LLC, 2012 WL 6012829, at *3 (S.D.Cal.); In re Heller Ehrman, LLP, 2011 WL 4542512, at *3 (Bankr.N.D.Cal.) (citing In re Healthcentral.com, 504 F.3d 775, 787 (9th Cir.2007)). See also Arkison, ——U.S. ——, 134 S.Ct. 2165, 189 L.Ed.2d 83 (district court's de novo review was same under appeal from summary judgment ruling as it would have been for proposed findings of fact and conclusions of law)."

The proceedings in this case are far different from those in *Bellingham*, where EBIA filed a motion to withdraw the reference and then abandoned it. (*In re Bellingham Insurance Agency*, Inc, 702 F.3d at 568.) EBIA lost a summary judgment motion in the bankruptcy court and appealed to the district court. (*Ibid.*) At the district court, EBIA again failed to object to the bankruptcy court's authority. (*Ibid.*)  EBIA even failed to raise the issue in its briefing to the Ninth Circuit, only raising it in a motion to dismiss shortly before oral argument. (*Ibid.*)  "Because EBIA waited so long to object, and in light of its litigation tactics, we have little difficulty concluding that EBIA impliedly consented to the bankruptcy court's jurisdiction." (*Ibid.*)

"In sum, EBIA had been alerted to the bankruptcy court's possible lack of authority, had ample opportunity to object, affirmatively participated in litigation at the bankruptcy court and district court, and only objected once it had lost in both those courts." (*Hasse v. Rainsdon (In re Pringle*), 495 B.R. 447, 460 (B.A.P. 9th Cir. 2013). "Thus, under Bellingham, sandbagging can supply consent through the knowing failure to object while purposefully proceeding through the bankruptcy court system." (*Id.*, at 458.)

When the Trustee and Creditors Committee filed their Objection to ART PACK, INC.'s claim, ART PACK asked the bankruptcy court to summarily determine the

Objection was insufficient as a matter of law. ART PACK, INC. then filed its Motion to Lift the Stay to try the case in state court because, in relevant part, it's a "claim consisting solely of state court issue" [in a court] "that is familiar with and regularly handles the state law issues involved in the claim expeditiously and economically." (3:16-23 2358-1.) "The judgment creditors liquidated their damages in state court and basic fairness dictates that Art Pack be allowed the same forum" (*Id*., at 4:25-26.) "Otherwise, the inference remains strong that choosing the bankruptcy forum allowed the judgment creditors to effectively strip away not only equal treatment of Art Pack, but also its fundamental right to a state court jury trial." (*Id*., at 5:8-10.)

When the bankruptcy court denied the Motion, ART PACK, INC. believed that it could request a jury trial in the District Court pursuant to 157(b)(5). There were different considerations at work, though. A state court trial would have resulted in a state court judgment, determined independently of the Judgment Creditors claims. In other words, a state court jury would have been solely focused on Marciano's malicious prosecution against ART PACK, INC., and would have neither known nor considered the Judgment Creditors' claims. Judicial review by a state court trial judge and appeals court would have proceeded similarly. Pursuant to the Plan, the end result of the state court process would have been a "Final Order," which then became an "allowed claim" providing ART PACK, INC. , as "Non-JC Unsecured Claim against [Marciano] which excludes all Judgment Creditor Claims" to be "made on a Pro Rata basis (based on the aggregate principal amount of all allowed Class 4A and Class 4B Claims." (Dkt # 2147 33-34(29-30) 29:18-34:12.)

ART PACK, INC. believed that a federal court jury trial could very well proceed differently because the trial judge would be sitting in a bankruptcy case, aware that the jury's judgment must be implemented in the context of the bankruptcy proceedings. The fundamental bankruptcy requirement of equitable distribution among similarly situated creditors, especially when the settlement agreement did not provide enough money to pay all judgments fully, would suggest a more integrated review of a jury award than

would be undertaken in state court. Consequently, it was ART PACK, INC.'s determination that judicial efficiency would be better served to proceed expeditiously before Judge Kaufman, and then have the District Court exercise its constitutional duty of independent review.

**V.**

**THE OPPOSITION UNDERSCORES THE NEED FOR
AN ARTICLE III JUDGE FAMILIAR WITH TORT LAW.**

Circumstances then dictated the bringing of this Motion. In its Opposition, the Plan Administrator points out an obvious issue of contention that will ultimately require this Court's factual and legal review; that of the appropriate standard for awarding economic damages to ART PACK, INC.

In its Motion, ART PACK, INC. pointed out the Objectors' confusion about the basis for lost profit damages in California, beginning with their Objection, which was one of the reasons ART PACK, INC. moved to dismiss the Objection as a matter of law. (Exhibit 19, at pages 26:17-28:20.)  ART PACK, INC. continued to identify the relevant law it its Trial Brief (Exhibit 6, at pages 26:12-32:2); Opening Final Argument (Exhibit 8, at pages 1:2-8:24); Closing Final Argument (Exhibit 10, at pages 26:21-31:17), and [Proposed] Findings of Law (Exhibit 11, at pages 42:18- 47:22.)

Despite this, Objectors continued to focus their arguments on "fair market value" instead of "lost profits." The former is only used in specific situations; see e.g., CACI 356. Buyer's Damages for Breach of Contract for Sale of Real Property (Civ. Code, § 3306); CACI 3501. "Fair Market Value." The latter is the measure of damages for ART PACK, INC.'s  harm. (See CACI 3903N. Lost Profits (Economic Damage).)

The Objectors began to champion this standard in their Objection (Exhibit 2) and concluded with it Exhibit 13, the Objectors  findings of law:  "18. If a business is completely destroyed so that no repair is possible, then the proper measure of damages is its fair market value." Authority: Plyglycoat Corp V. Hirsh Distributshire, 442 So. 2d 958 (Fla. 1983).

The Plan Administrator then repeats it in the Opposition ("[I]t is clear as pled, Art Pack's malicious prosecution claim is not a personal injury claim because the only compensatory damages sought are damages for 'lost profit' i.e., losses that effected [sic] its good will and reputation." (8:16-18).

Good will is a separate measure of damages (see CACI 3513.), and is irrelevant to ART PACK, INC.'s claim. Reputation is an element of damages that was central to the Iskowitz' claim, but is not a separate measure of damages for ART PACK, INC. ( See *Iskowitz,* at \*11,\*12["A statement which is defamatory on its face, such as a statement that tends to injure plaintiff in his or her occupation, is libelous per se and actionable without proof of special damage. (Civ.Code, § 45; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 541, p. 794.) However, a plaintiff's failure to prove special damages is a factor in concluding that damages for injury to reputation are excessive. (Weller v. American Broadcasting Companies, Inc. (1991) 232 Cal.App.3d 991, 1014.)" On this record, in view of the absence of any evidence of loss of clients, loss of potential clients, or loss of revenue, the evidence does not begin to support the $7 million awarded to Gary, Theresa and Carolyn as damages for injury to reputation"].)

## VI.

### IT IS THE OBJECTORS FUNDAMENTAL REFUSAL TO ACKNOWLEDGE CALIFORNIA LAW THAT PRECLUDES ANY REASONABLE POSSIBILITY OF SETTLEMENT.

When this Court conducts its independent review of the proffered facts and law, the various filings in this case will serve to identify the parties' positions. The accompanying Declaration of Dennis M. Elber references in further detail, for review when appropriate, the two issues identified in the Motion; Dr. Mellman's medical opinion on causation and the availability of punitive damages. The former may or may not need to be decided because, as ART PACK, INC. stated in its closing argument, a trier of fact could find causation without even considering Dr. Mellman's causation opinion. That said, ART PACK, INC. believes it is clearly admissible, contrary to Judge Kaufman's reasoning, which is contained in the the Elber Declaration.

The issue of punitive damages is, of course, fundamental. The judgment creditors got them, and then the Objectors attempted to use the cover of their involuntary bankruptcy filing to preclude ART PACK, INC. from similar treatment. However, there is a point at which ART PACK, INC.'s award of punitive damages will disconnect from the judgment creditors because of the inherently punitive nature of a maximum emotional distress award that limits co-extensive punitive damages to a one to one ratio.

In contrast, ARTPACK, INC.s compensatory damage award will consist solely of economic damages. ART PACK, INC. understands that a full award of compensatory damages would limit the award of punitive damages to about a one to one ratio, and a punitive damage award of $40 million dollars is sustainable based on Marciano's own admission in bankruptcy filings that he was worth at least $175 million at the time of the involuntary bankruptcy filing.  However, should the fact finder award less than the maximum compensatory damages, California law and the facts of this case would support a multiplier of up to nine (9) times, to a sustainable maximum of $40 million. (See *Boeken v. Philip Morris Incorporated* 127 Cal.App.4th 1640, 1703 (2005) [extreme reprehensibility of defendant's conduct found to "justify a ratio of at least 9 to 1"].)

The Objectors' inability to apply fundamental California law has pervaded every aspect of this case and will preclude any realistic chance of settlement, because not only have the Objectors refused to acknowledge the proffered evidence, the Objectors have failed to acknowledge applicable California law. In point of fact, the Objectors have affirmatively ignored California law, choosing instead to fashion legal principles in contravention of controlling California law.

ART PACK, INC.  concludes with an excerpt from its final argument to illustrate why the March 4, 2015 settlement conference is a further waste of both judicial resources and the parties' resources.  ART PACK, INC. will fully participate, as ordered, but posits that this case can only be resolved by a judgment. ART PACK, INC. submits that the following extensive excerpt fully explains why this case will not be resolved until this Court renders findings of fact and conclusions of law. In their final argument, the

1  Objectors so cavalierly ignored California law, that ART PACK, INC. repeatedly quoted,

2  and then emphasized, the Objectors' position to emphasize the Objectors' disconnect

3  from controlling legal authority.

4    "The evidence allows for only one reasonable, non arbitrary conclusion, which

5    is that the malicious prosecution by Marciano of Art Pack Inc., under the

6    ownership and control of Ali Mohajeri, was 'a factor' that was 'more than a

7    remote or trivial factor' in the sale and dissolution of Claimant.  Because it 'does

8    not have to be the only cause' of the sale and dissolution of Art Pack, Inc under

9    the ownership and control of Ali Mohajeri, 'Marciano cannot avoid responsibility

10   just because some other person, condition, or event was also a substantial factor

11   in causing the harm.'

12   "There is just no other plausible conclusion that can be drawn from Objectors'

13   Post Trial Brief and its Proposed Findings of Fact and Conclusion of Law.  Simply

14   put, Art Pack, Inc's claim for $44,454,178  has effectively been conceded by

15   Objectors.

16   "It is the Objectors' stark misuse of the term 'proximate cause' throughout its

17   analysis that informs this concession (Objectors Post Trial Brief i:8,9,11,12,15;

18   1:17,20; 2:2,28; 4:1; 6:3,7; 11:8). The Objectors contend that 'regardless of

19   whether a tort is based on intentional, rather than negligent conduct, the plaintiff

20   is still required to establish that there is a substantial onnection [sic] between the

21   defendant's conduct and the harm alleged to have resulted from that conduct, and

22   where the harm resulted from other factors, there can be no recovery. City and

23   County of San Francisco v. Phillip Morris, Inc. 957 F. Supp. 1130, 1143 (N.D.

24   Cal. 1997) [noting that even where an intentional tort is alleged, plaintiff must

25   prove that the damages were a result of the defendant's conduct and not "some

26   other factor."]' Accordingly, as used herein, the term 'proximate cause' refers to

27   the 'substantial factor' test of causation." (Objectors' Post Trial Brief fn. 3 pp. 1-

28   2) (emphasis added.)

"No, the term 'proximate cause' does not refer to the 'substantial factor' test of causation.  They are different legal concepts, dealing with different issues. The Objectors either did not read the case they cited, truly do not understand California law or, more likely, expect their assertion to be accepted just because they said it. *City and County of San Francisco* instructs 'there is a general duty to refrain from intentional tortious conduct ...[T]he intentional misrepresentation claims [are viewed] in light of the <u>different proximate cause standard for intentional torts</u> under California law.' *City and County of San Francisco*, 957 F.Supp. at 1141. (Emphasis added.)

"'Proximate cause' is the legal policy that informs the consequences of Marciano's intentional misconduct. 'Substantial factor' informs factual causation. ' "[P]roximate cause is ordinarily concerned, not with the fact of causation, but with the various considerations of [public] policy that limit an actor's responsibility for the consequences of his conduct. Rules of legal cause operate to relieve the defendant whose conduct is a cause in fact of the injury where it would be considered unjust to hold him legally responsible." ' (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 982-983.)(citations and quotations omitted.)

"In *Parsons v. Crown Disposal Co*. (1997) 15 Cal.4th 456 the California Supreme Court  reiterated that 'when addressing conduct on the part of a defendant that is deliberative, and undertaken to promote a chosen goal, chief among the factors which must be considered is the social value of the interest which the actor is seeking to advance.' *Id*. at 472 (Citations and quotations omitted.) '[T]he increased liability imposed on an intentional wrongdoer appears to reflect the psychological fact that solicitude for the interests of the actor weighs less in the balance as his moral guilt increases and the social utility of his conduct diminishes.' *(Thing v. La Chusa* (1989) 48 Cal.3d 644, 652-653)

"'The commission of th[e] tort [of malicious prosecution] necessarily involves,

1    indeed requires, an impermissible motivation.' (*Downey Venture v. LMI Ins. Co.*
2    (1998) 66 Cal.App.4th 478, 505.)   The presence of such hostility, ill will or
3    improper motivation is sufficient to establish the tort of malicious prosecution as
4    not only an intentional act, but one that is wrongful; and it is necessarily harmful
5    to both the plaintiff and the judicial process.(Id. at p.506.) 'Such harm and injury
6    is both inherent and predictable.' (Ibid.) Malicious prosecution has 'arguably
7    served as an instrument with which to maliciously injure a small business and its
8    owner.' (*Citi–Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003)
9    114 Cal.App.4th 906, 914.)

10    "That is what happened here. The injury is the sale and dissolution of Art Pack
11    Inc., under the ownership and control of Ali Mohajeri and the full amount of
12    resultant lost profits due the entity that Marciano set out to destroy. Because the
13    Objectors' 'proximate cause' argument fails and they have provided no other legal
14    or factual basis for reducing Art Pack's claim below $44,454,178, the full amount
15    of lost profits damages stands uncontested."

16    "The Objectors' inability to grasp basic California legal concepts result in
17    repeated admissions throughout their brief. Consider the following:

18    'Furthermore, while Dr. Mellman testified that he noted a "dramatic change" in
19    the nature of medical complaints beginning in May of 2007, Dr. Mellman never
20    differentiated between the effects on Ali of those action taken by marciano against
21    Art Pack and the Mohajeris before the filing of Second Amended Complaint on
22    February 6, 2008 (which effects the Mohajeris repeatedly assert were substantial
23    and "crushing") and the effects on Ali of the filing and subsequent prosecution of
24    Second Amended Complaint against Art Pack.  As a consequence, even assuming
25    Marciano's actions caused Ali stress, Dr. Mellman offered no basis for attributing
26    Ali's decision to sell Art Pack's assets in April of 2008 to stress from actions
27    during the relatively brief period between the filing of the Second Complaint and
28    the sale decision (or less than three months) as opposed to the three times long

period (i.e., from the beginning of May, 2007 through the beginning of February, 2008) that had preceded it. Indeed, the natural inference from Dr. Mellman's testimony would be to the contrary since the only "dramatic change" Dr. Mellman noted in Ali's medical complaints and clinic visits in May of 2007, and no in or after February of 2008.' (Objectors Trial Brief ; Objectors Post trial brief at 5:15-28)(emphasis added.).

    "Claimant added emphasis to highlight the difference between the rule Objectors posit and the actual California law that must be applied because, contrary to Objectors' assertion, causation is not singular  and there can be multiple factual causes under California law; CACI 430. Causation: Substantial Factor instructs: 'A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.'  Further, '[a] person's [conduct] may combine with another factor to cause harm. If you find that [the malicious prosecution] was a substantial factor in causing harm [the sale and dissolution of Art Pack, Inc. under the ownership and control of Ali Mohajeri] then [Marciano] is responsible for the harm. Marciano cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing [Art Pack, Inc. under the ownership and control of Ali Mohajeri's harm.' (CACI 431. Causation: Multiple Causes.).

    "The lawsuit was the defining event because it consumed time, energy and hope. However, all it had to be was a 'factor' that was more than 'remote or trivial.'  Once that is determined, Marciano is responsible for the $44,454,178 in lost profits based on the historical data of profitability and the uncontradicted testimony that Art Pack was to be a lifetime business for Ali and Ellana.'

ART PACK, INC. understands that it is asking this Court to dive into troubled waters to forthwith withdraw this case. ART PACK, INC. would rather not have had to make this Motion because of the onus it imposes on this Court to act forthwith. However,

it is not a matter of if this Court will render judgment in this case, it is matter of when. Again, why wait? Withdrawal will allow us all to be secure that the facts and law will be viewed impartially by an Article III judge, outside of the close confines of bankruptcy court.

## VII.

## CONCLUSION.

It is respectfully submitted that good cause has been shown for the withdrawal of the bankruptcy court reference. ART PACK, INC. thus hereby respectfully requests that the Motion be granted.

DATED: February 9, 2015       Respectfully Submitted,

STOLPMAN, KRISSMAN, ELBER
& SILVER LLP

By:    s/ Dennis M. Elber
        DONNA SILVER
        DENNIS M. ELBER
        Attorneys for Claimant, Art Pack
        E-Mail: elber@skeslaw.com /
              dsilver@skeslaw.com

F:\FILES\ART PACK INC\USDC\Motion to Withdraw\Reply to Opposition to Motion To Withdraw.wpd

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is: 111 W. Ocean Boulevard, Suite #1900, Long Beach, California 90802.

On the date set forth below, I served the foregoing document(s):

**REPLY TO OPPOSITION TO MOTION TO WITHDRAW BANKRUPTCY REFERENCE; MEMORANDUM OF POINTS AND AUTHORTIES**

[  ]   BY MAIL as follows: I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice, all mail is deposited with the U.S. Postal Service on the same day with postage thereon, fully prepaid at Long Beach, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postage meter date is more than one day after date of deposit for mailing in the affidavit.  See attached mailing list for addressee(s).

[  ]   BY PERSONAL SERVICE: I caused a true and correct copy thereof enclosed in a sealed envelope, to be delivered by hand to the addressee(s) listed on the attached mailing list.

[  ]   BY OVERNIGHT COURIER: I caused the above-referenced document to be delivered to an overnight courier service (FED EX, UPS, U.S.P.S. Express Mail, etc.) for delivery to the addressee(s) listed on the attached mailing list.

[  ]   BY FACSIMILE TRANSMISSION: I caused the above-referenced  document to be transmitted to the addressee(s) at the facsimile number listed on the attached mailing list.

[ X ]   BY E-MAIL/ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the above-referenced document to be transmitted to the person at the e-mail address listed on the mailing list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[  ]   (State) I declare under penalty of perjury, pursuant to the laws of the State of California, that the above is true and correct.

[ X ]   (Federal) I declare under penalty of perjury under the laws of the United States of America, that the above is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

Executed this 9th day of February, 2015, at Long Beach, California.

Donna M. Vizcarrondo, Declarant

**IN RE: GEORGES MARCIANO, Debtor (1:11-bk-10426-VK)**

**ART PACK, INC. vs. DAVID GOTTLIEB, et al.**

**United States District Court**
**Central District of California**
**Southern Division**

**Case No.: 2:15-cv-00444-CJC**
**Hon. Cormac J. Carney**
**Courtroom 9B**

| | |
|---|---|
| Jeremy V. Richards, Esq. - SBN 102300<br>James K.T. Hunter, Esq. - SBN 73369<br>Daryl G. Parker, Esq. - SBN 47048<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, California  90067<br>Telephone: (310) 277-6910<br>Facsimile:  (310) 201-0760<br>E-mail: jrichards@pszjlaw.com<br>jhunter@pszjlaw.com ; dparker@pszjlaw.com | Attorneys for DAVID GOTTLIEB,<br>PLAN ADMINISTRATOR |
| Peter A. Davidson,  Esq. - SBN 76194<br>Kimberly Lewis, Esq. - SBN 137637<br>ERVIN COHEN & JESSUP LLP<br>9401 Wilshire Boulevard, Ninth Floor<br>Beverly Hills, California 90212-2974<br>Telephone: (310) 273-6333<br>Facsimile:  (310) 859-2325<br>E-mail: pdavidson@ecjlaw.com<br>frasch@ecjlaw.com ; klewis@ecjlaw.com | Attorneys for OVERSIGHT<br>COMMITTEE |
| John N. Tedford, IV, Esq. - SBN 205537<br>DANNING, GILL, DIAMOND & KOLLITZ, LLP<br>1900 Avenue of the Stars, 11th Floor<br>Los Angeles CA 90067-4402<br>Telephone: (310) 277-0077 \|<br>Facsimile:  (310) 277-5735<br>E-mail: jtedford@dgdk.com | Co-counsel for Claimant,<br>ART PACK, INC. |
| Barney Given, Esq.<br>LOEB & LOEB LLP<br>10100 Santa Monica Boulevard, Suite 2200<br>Los Angeles, CA 90067<br>Telephone: (310) 282-2000/Fax: (310) 282-2200<br>E mail: bgiven@loeb.com | Attorney for Debtor,<br>GEORGES MARCIANO |
| *Mandatory Chambers Copy*:<br>Hon. Cormac J. Carney<br>United States District Court<br>Central District of CA, Southern Division<br>Ronald Reagan Federal Building<br>411 West 4th Street, Courtroom 9B *(box on 9th Floor)*<br>Santa Ana, CA 92701<br>Telephone: (714) 338-2849 | |